*UNITED STATES DISTRICT COURT*
*DISTRICT OF MAINE*

| | | |
|---|---|---|
| *ROBERTA KELLY,* | ) | |
| | ) | |
| *Plaintiff* | ) | |
| | ) | |
| *v.* | ) | *Civil No. 09-78-B-W* |
| | ) | |
| *MICHAEL J. ASTRUE,* | ) | |
| *Commissioner of Social Security,* | ) | |
| | ) | |
| *Defendant* | ) | |

### *REPORT AND RECOMMENDED DECISION*[1]

This Social Security Disability ("SSD") and Supplemental Security Income ("SSI") appeal raises the question of whether the commissioner supportably found the plaintiff, who alleges that she is disabled by fibromyalgia, bipolar disorder, depression, anxiety, agoraphobia, and back and knee problems, capable of performing work existing in significant numbers in the national economy.  I recommend that the decision of the commissioner be vacated and the case remanded for further development.

In accordance with the commissioner's sequential evaluation process, 20 C.F.R. §§ 404.1520, 416.920; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff suffered from a major depressive disorder, moderate in degree; non-surgical fusion of the C-5 and C-6 vertebral

---

[1] This action is properly brought under 42 U.S.C. §§ 405(g) and 1383(c)(3).  The commissioner has admitted that the plaintiff has exhausted her administrative remedies.  The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2)(A), which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office.  Oral argument was held before me on September 17, 2009, pursuant to Local Rule 16.3(a)(2)(C), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

bodies, associated with moderately extensive degenerative changes in the cervical spine, the latter being characterized by left foraminal stenosis at the C-3/C-4 and C-6/C-7 levels, degenerative disc disease from C-2 to C-5 and C-6 to C-7, and mild flattening of the left para-central aspect of the spinal cord at the C-6/C-7 level, but without clear-cut evidence of radiculopathy, peripheral neuropathy, myopathy, or edema of the spinal cord; fibromyalgia; right para-central intervertebral disc herniation at the L-5/S-1 level of the spine, associated with facet joint hypertrophy, creating some mild lateral recess stenosis, worse on the left than on the right, and slightly compressing the S-1 nerve root on the right; a bipartite patella on the left; and low-grade arthritic changes in the right knee, status post arthroscopy of the right knee, performed as treatment for patellofemoral arthritis, Finding 3, Record at 33; that she did not suffer from any other severe impairment meeting the applicable continuity and durational criteria, the existence of which was demonstrated by the requisite objective medical evidence, Finding 4, *id*.; that she was able to lift and carry 20 pounds occasionally and 10 pounds frequently, to stand and walk with normal breaks for three to four hours in an eight-hour workday, and to sit with normal breaks for six or more hours per day, that she could only occasionally climb, balance, stoop, kneel, crouch, or crawl, that she had no manipulative or environmental limitations, and that she could be expected to experience only mild restrictions of her activities of daily living, only mild difficulties in maintaining social functioning, and only mild difficulties in maintaining concentration, persistence, and pace, with no expected episodes of emotional decompensation of extended duration, Finding 6, *id*. at 33-34; that her allegations regarding the pain she experienced, her general symptomatology, and the functional limitations imposed by her impairments were not fully credible to the extent that she maintained that she was more functionally limited than indicated above, Finding 7, *id*. at 34; that the mild limitations flowing

2

from her mental impairments, taken with the limitations on her ability climb, balance, stoop, kneel, crouch, and crawl, would not substantially erode the range of unskilled jobs of a sedentary exertional level that she might otherwise perform, and that Rule 201.27, Appendix 2 to Subpart P, 20 C.F.R. § 404 (the "Grid"), when used as a framework for decision-making, warranted a finding that there were unskilled sedentary jobs existing in significant numbers in the national economy that the plaintiff could be expected to perform, Finding 11, *id.*; and she therefore had not been under a qualifying disability at any time prior to the date of decision (April 25, 2007), Finding 12, *id.*[2]  The Appeals Council declined to review the decision, *id.* at 5-7, making it the final determination of the commissioner, 20 C.F.R. §§ 404.981; 416.1481; *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence.  42 U.S.C. §§ 405(g), 1383(c)(3); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996).  In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn.  *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than her past relevant work.  20 C.F.R. §§ 404.1520(g), 416.920(g); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7.  The record must contain positive evidence in support of the commissioner's findings regarding the plaintiff's residual

---

[2] The plaintiff continued to be insured for purposes of SSD benefits through the date of the decision.  *See* Finding 2, Record at 33.

work capacity to perform such other work.  *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

The plaintiff complains that (i) the administrative law judge arrived at a flawed determination of her residual functional capacity ("RFC") when he ignored material evidence, failed to discuss the weight accorded to expert medical opinions, and either relied on medical opinions rendered obsolete by later-produced, material medical evidence and/or interpreted raw medical data himself, and (ii) this error undermined his ultimate Step 5 finding, both to the extent that he relied on the Grid and to the extent that he alternatively relied on vocational expert testimony.  *See* Plaintiff's Itemized Statement of Errors ("Statement of Errors") (Docket No. 9) at 3-13.  I agree that on these bases reversal and remand are warranted.

## I.  Discussion

### A.  Step 4 Determination: RFC

The plaintiff's points of error implicate several bedrock Social Security principles:

1.      That, at Step 5, the record must contain positive evidence in support of the commissioner's findings regarding a claimant's RFC, *see, e.g., Rosado*, 807 F.2d at 294;

2.      That, unless the sequelae of a claimant's impairments are obvious to a layperson as a matter of common sense, an administrative law judge is not qualified to determine RFC on the basis of the raw medical evidence but instead must look to a medical expert to do so, *see, e.g., Gordils v. Secretary of Health & Human Servs.*, 921 F.2d 327, 329 (1st Cir. 1990) (although an administrative law judge is not precluded from "rendering common-sense judgments about functional capacity based on medical findings," he "is not qualified to assess residual functional capacity based on a bare medical record"); *Rohrberg v. Apfel,* 26 F. Supp.2d 303, 311 (D. Mass. 1998) ("[T]he ALJ, although empowered to make credibility determinations and to resolve

conflicting evidence, is not at liberty simply to ignore uncontroverted medical reports.  An ALJ

is not qualified to assess a claimant's RFC on the basis of bare medical findings, and as a result

an ALJ's determination of RFC without a medical advisor's assessment is not supported by

substantial evidence.") (citations and internal punctuation omitted); and

> 3.      That an administrative law judge may not simply ignore the opinions of treating

sources or Disability Determination Services ("DDS") expert consultants, but must take them

into consideration and explain the weight accorded them, *see, e.g*., Social Security Ruling 96-5p,

reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2009) ("SSR

96-5p"), at 127 (even as to issues reserved to the commissioner, "the notice of the determination

or decision must explain the consideration given to the treating source's opinion(s)"); Social

Security Ruling 96-8p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991

(Supp. 2009) ("SSR 96-8p"), at 150 (an administrative law judge can reject a treating-source

opinion as to RFC but "must explain why the opinion was not adopted"); Social Security Ruling

96-6p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2009)

("SSR 96-6p"), at 129 ("Findings of fact made by State agency medical and psychological

consultants and other program physicians and psychologists regarding the nature and severity of

an individual's impairment(s) must be treated as expert opinion evidence of nonexamining

sources at the administrative law judge and Appeals Council levels of administrative review. . . .

Administrative law judges and the Appeals Council may not ignore these opinions and must

explain the weight given to these opinions in their decisions.").

## 1.  Physical RFC

As the plaintiff's counsel underscored at oral argument, the record reflects wholly

inadequate consideration of her fibromyalgia, in itself warranting reversal and remand.

The plaintiff was diagnosed on March 2, 2007, by rheumatologist Fadi M. Ajine, M.D., as having fibromyalgia of one year's duration.  *See* Record at 450.  Fibromyalgia is "a common, but elusive and mysterious, disease, much like chronic fatigue syndrome, with which it shares a number of features[,]" that is characterized by "'pain all over,' fatigue, disturbed sleep, stiffness, and . . . multiple tender spots, more precisely 18 fixed locations on the body (and the rule of thumb is that the patient must have at least 11 of them to be diagnosed as having fibromyalgia) that when pressed firmly cause the patient to flinch."  *Sarchet v. Chater*, 78 F.3d 305, 306 (7th Cir. 1996).  *See also Johnson v. Astrue*, No. 08-2486, 2009 WL 2151381, at *1 (1st Cir. July 21, 2009) ("Fibromyalgia is defined as a syndrome of chronic pain of musculoskeletal origin but uncertain cause.  Further, the musculoskeletal and neurological examinations are normal in fibromyalgia patients, and there are no laboratory abnormalities.  The American College of Rheumatology nonetheless has established diagnostic criteria that include pain on both sides of the body, both above and below the waist, and point tenderness in at least 11 of 18 specified sites.") (citations and internal punctuation omitted).  Dr. Ajine found the plaintiff to exhibit "tenderness on palpation of all fibromyalgia trigger points."  Record at 450.

Once an administrative law judge accepts a diagnosis of fibromyalgia, he or she has "no choice but to conclude that the claimant suffer[s] from the symptoms usually associated with such condition, unless there [is] substantial evidence in the record to support a finding that claimant did not endure a particular symptom or symptoms."  *Johnson*, 2009 WL 2151381, at *5 (citation and internal punctuation omitted).  "The primary symptom of fibromyalgia, of course, is chronic widespread pain[.]"  *Id*.

The administrative law judge failed to heed this dictate.  He accepted Dr. Ajine's diagnosis of fibromyalgia, which he deemed a severe impairment.  *See* Finding 3-4, Record at

33.   Yet, he found the plaintiff's allegations regarding her pain, symptoms, and functional limitations less than fully credible on grounds that she (i) did "not suffer from impairments which could reasonably be expected to produce all of the pain and functional limitations of which she complains" and (ii) "[h]er allegations are not fully consistent with the objective medical evidence, the opinions of her treating sources or her described activities of daily living." *Id*. at 30.   With respect to her fibromyalgia, he noted that she denied numbness, had normal blood work, had an essentially normal physical examination, and was prescribed an active exercise program.   *See id*. at 27.   However, a lack of objective findings is consistent with a diagnosis of fibromyalgia, and a prescription for physical therapy and/or aerobic exercise, an accepted treatment for the condition, is not in itself inconsistent with a finding of physical limitations stemming therefrom.   *See Johnson*, 2009 WL 2151381, at *3.

This error perhaps emanated from, and was compounded by, further error of which the plaintiff complains: that the administrative law judge assessed the effects of the plaintiff's fibromyalgia on her RFC on the basis of the raw medical evidence, the record being devoid of any expert RFC opinion that purported to take into account the fibromyalgia diagnosis.

The Record contains four medical opinions touching on the plaintiff's physical RFC: the opinion of treating physician Kristine E. Sanden, D.O., dated December 29, 2005, that "given [the plaintiff's] psychosocial issues, depression, agoraphobia and knee pain, I think she probably will need to be out of work perhaps for up to a year[,]" Record at 133;[3] the April 3, 2006, opinion of DDS nonexamining consultant L. Johnson, M.D., that the plaintiff was capable of

---

[3] In an earlier progress note dated December 12, 2005, Dr. Sanden had stated: "[The plaintiff] asks about disability and wonders if she would be out of work for the next year.  She has multiple issues including her depression, knee degeneration, and her back pain.  It is possible that she would have to be out of work for a year while she is undergoing treatment for these things.  However, it is difficult to make a prediction as such.  She certainly cannot work for the next six months." *Id*. at 134.

lifting/carrying 20 pounds occasionally and 10 pounds frequently, of sitting, walking, or standing with normal breaks for a total of six hours in an eight-hour workday, and could only occasionally climb, balance, kneel, stoop, crouch, and crawl, *see id.* at 221-22; the August 24, 2006, opinion of DDS nonexamining consultant Robert Hayes, D.O., paralleling that of Dr. Johnson, except that Dr. Hayes found the plaintiff able to balance frequently, rather than occasionally, and to need to avoid uneven surfaces, *see id.* at 274-75, 277; and the January 16, 2007, opinion of treating orthopedist R. William Rice, M.D., that the plaintiff was limited to lifting/carrying 20 pounds occasionally and 10 pounds frequently, standing and/or walking with normal breaks for a total of at least two hours in an eight-hour workday, although she could sit without limitation, and was also limited by patellofemoral arthritis in pushing and/or pulling with her lower extremities and could only occasionally climb, balance, kneel, crouch, crawl, and stoop, *see id.* at 439-40.

All four expert physical RFC opinions predated the plaintiff's fibromyalgia diagnosis. While the administrative law judge essentially accepted the Rice RFC opinion, *compare* Finding 6, *id.* at 33-34 *with id.* at 439-40, Dr. Rice both lacked the benefit of the fibromyalgia diagnosis and was an orthopedic specialist who treated the plaintiff solely for a knee condition, *see, e.g., id.* at 443-45. The administrative law judge, as a layperson, was not in a position to assess limitations stemming from the plaintiff's serious new diagnosis on the basis of raw medical evidence or judge that experts' RFC opinions would remain unchanged were they aware of that diagnosis. That he did so is reversible error. *See, e.g., Gordils*, 921 F.2d at 329.

Finally, as the plaintiff observes, the administrative law judge erred in giving no consideration whatsoever to whether she suffered from obesity, as she claimed in a written submission to him. *See* Statement of Errors at 4; Record at 129. The plaintiff is five feet one

8

inch tall.  *See* Record at 87.  Body Mass Index ("BMI") calculations based on weights recorded in progress notes indicate that she was at least mildly obese.  *See* Statement of Errors at 4; Record at 133 (weight of 184 pounds recorded on December 29, 2005, which results in BMI of 34.8), 140 (weight of 184 pounds recorded on August 31, 2005); Social Security Ruling 02-1p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2009) ("SSR 02-1p"), at 252 (National Institutes of Health clinical guidelines recognize three levels of obesity, with Level I, the lowest, encompassing BMIs of 30.0 to 34.9).

While, so far as appears from the record, the plaintiff was described as obese, *versus* overweight, on only one occasion, by Dr. Sanden on July 7, 2004, *compare* Record at 151 *with id*. at 133, 146, 150, 152, 158, the administrative law judge should have considered whether she should be so characterized, *see, e.g*., SSR 02-1p at 254 ("When the evidence in a case does not include a diagnosis of obesity, but does include clinical notes or other medical records showing consistently high body weight or BMI, we may ask a medical source to clarify whether the individual has obesity.  However, in most such cases we will use our judgment to establish the presence of obesity based on the medical findings and other evidence in the case record, even if a treating or examining source has not indicated a diagnosis of obesity.").  An obese claimant is entitled to "an individualized assessment of the impact of obesity on [his or her] functioning when deciding whether the impairment is severe."  *Id*. at 255.  Such an individualized assessment was not performed in this case.[4]

---

[4] At oral argument, counsel for the commissioner emphasized that the plaintiff's BMI was below 40.  While individuals with BMIs of 40 or greater, or Level III obesity, are at "greatest risk for developing obesity-related impairments[,]" SSR 02-1p at 252, the ruling does not indicate that those with lesser levels of obesity have no obesity-related restrictions.  To the contrary, it states, "These levels [I through III] describe the extent of obesity, but they do not correlate with any specific degree of functional loss."  *Id*.

At oral argument, counsel for the commissioner argued that any error with respect to this issue was harmless, the plaintiff having failed to identify any restrictions that allegedly stem from obesity.  For this proposition he cited *Burch v. Barnhart*, 400 F.3d 676, 683-84 (9th Cir. 2005) (error in failing to discuss claimant's obesity was harmless when claimant failed even on appeal to identify any limitations allegedly stemming from obesity).  His point is well-taken; however, should the court agree that remand is warranted on other bases, this error should be corrected, and the issue addressed, on remand.

For all of the foregoing reasons, the administrative law judge's physical RFC finding cannot be discerned to be supported by substantial evidence.

## 2.  Mental RFC

The Record contains three medical/psychological opinions concerning the plaintiff's mental RFC: that of Dr. Sanden, discussed above; the opinion of DDS nonexamining psychologist David R. Houston, Ph.D., dated March 18, 2006, that the plaintiff had a severe mental impairment characterized, *inter alia*, by moderate impairment of her social functioning and her concentration, persistence, and pace, as a result of which she was limited to understanding and remembering simple instructions and carrying out simple tasks and was unable to work with the public, *see* Record at 238, 244, and the opinion of DDS nonexamining psychologist Brenda Sawyer, Ph.D., dated July 17, 2006, that the plaintiff's mental impairment was non-severe, imposing only mild limitations, *see id*. at 259, 269.

The administrative law judge omitted any mention of the opinions of Drs. Houston or Sanden, purported to adopt the findings of Dr. Sawyer, and then inexplicably found the plaintiff to suffer from the severe mental impairment of a major depressive disorder, moderate in degree, despite determining that the impairment imposed only mild limitations, *see id*. at 24-25, a

circumstance in which a mental impairment ordinarily is judged non-severe, *see, e.g.*, 20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1) ("If we rate the degree of your limitation in the first three functional areas as 'none' or 'mild' and 'none' in the fourth area, we will generally conclude that your impairment(s) is non-severe, unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities[.]").[5]

The mental RFC finding is flawed, both because it fails to address the opinions of Drs. Sanden and Houston and because, without explication, it arrives at the seemingly inconsistent conclusions that the plaintiff suffered from a severe mental impairment, moderate in degree, and yet that impairment imposed only mild functional limitations. At oral argument, the plaintiff's counsel correctly observed that a flaw of this nature cannot be overlooked as a mere scrivener's error. While courts overlook an "arguable deficiency in opinion-writing technique" if not outcome-determinative, *see Bryant ex rel. Bryant v. Apfel,* 141 F .3d 1249, 1252 (8th Cir.1998), reversal and remand are warranted when failures to explicate and/or even address material issues prevent a reviewing court from concluding that the administrative law judge reached a supportable result via an acceptable analytical pathway, *see, e.g., Nguyen v. Chater,* 172 F.3d 31, 35 (1st Cir.1999) ("The ALJ's findings of fact are conclusive when supported by substantial evidence, but are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts.") (citations omitted).[6]

---

[5] Although there were two state agency psychologists, Drs. Houston and Sawyer, the administrative law judge referred to the findings of "[t]he state agency psychologist[,]" singular, Record at 25, raising a question of whether he entirely overlooked Dr. Houston's report.

[6] At oral argument, counsel for the commissioner contended that the administrative law judge had embraced the Sawyer opinion, which was the more recent of the two and was consistent with evidence of record indicating that the plaintiff's depression had improved. He cited *Ware v. Apfel*, No. IP 99-1526-C H/G, 2000 WL 1707942 (S.D. Ind. Nov. 14, 2000), for the proposition that it is harmless error to fail to discuss nonexamining experts' RFC opinions when an administrative law judge's opinion is supported by the most recent nonexamining expert opinion of record. *See Ware*, 2000 WL 1707942, at *11. Nonetheless, in *Ware*, the limitations found by the administrative law judge "were derived directly from" the more recent RFC opinion. *Id*. at *4. In this case, by contrast, it is unclear whether *(continued on next page)*

11

### B.  Step 5 Determination: Ability To Do Other Work

As the plaintiff suggests, *see* Statement of Errors at 10-13, the collective errors made at Step 4 cannot be discerned to be harmless.  The administrative law judge relied on application of the Grid in finding her not disabled.  *See* Finding 11, Record at 34.  The Grid generally cannot permissibly be used as a vehicle to meet the commissioner's Step 5 burden – vocational-expert testimony ordinarily must be sought instead – if a claimant's nonexertional impairments significantly affect his or her ability "to perform the full range of jobs" at the appropriate exertional level.  *Ortiz v. Secretary of Health & Human Servs.*, 890 F.2d 520, 524 (1st Cir. 1989) (citation and internal quotation marks omitted).

The administrative law judge found that the plaintiff's mild mental impairments and limitations on her ability to climb, balance, stoop, kneel, crouch, and crawl did not substantially erode the job base of unskilled sedentary work.  *See* Finding 11, Record at 34.  Yet, as discussed above, the underlying predicate for that assessment, that the plaintiff suffered only the aforementioned nonexertional impairments, is flawed, and there is record evidence that the plaintiff's nonexertional impairments were of greater magnitude than found.  Should the court agree that remand is warranted, and should the commissioner on remand again choose to rely on the Grid, the commissioner would bear the burden of demonstrating that the plaintiff's nonexertional impairments did not preclude such reliance.  *See, e.g., Seavey v. Barnhart,* 276 F.3d 1, 7 (1st Cir. 2001) ("[A]though a nonexertional impairment can have a negligible effect,

_____
the administrative law judge fully embraced the Sawyer opinion.  In the circumstances, the argument of counsel for the commissioner amounts to a *post hoc* rationalization.  *See Federal Power Comm'n v. Texaco Inc.,* 417 U.S. 380, 397 (1974) ("[W]e cannot accept appellate counsel's *post hoc* rationalizations for agency action; for an agency's order must be upheld, if at all, on the same basis articulated in the order by the agency itself.") (citations and internal quotation marks omitted); *Cagle v. Astrue,* 266 Fed. Appx. 788, 794 (10th Cir. 2008) (rejecting commissioner's "impermissible attempt to provide a *post hoc* rationale in support of the ALJ's decision").

ordinarily the ALJ must back such a finding of negligible effect with the evidence to substantiate

it, unless the matter is self-evident.")  (citation and internal quotation marks omitted).

Although the administrative law judge officially relied on the Grid at Step 5, he made an

unofficial alternative finding that "even if [he] were to accept as true certain additional functional

limitations alleged by the claimant, the testimony of an impartial vocational expert establishes

the existence, in significant numbers in the national economy, of specific unskilled, sedentary

jobs the claimant would be capable of performing."  Record at 33.

In so stating, the administrative law judge evidently alluded to the vocational expert's

testimony in response to a hypothetical question in which he asked him to assume, in addition to

the limitations ultimately included in the official RFC finding, a limitation to standing only 30

minutes at a time, a need to avoid hazardous machinery, and a restriction to jobs involving only

limited interaction with co-workers or the general public.  *See id*. at 527-28.  The vocational

expert testified that such a person could perform the unskilled sedentary jobs of surveillance

system monitor, dowel inspector, document preparer, and telephone answering service operator.

*See id*. at 528.

As the plaintiff points out, the administrative law judge neglected to transmit to the

vocational expert several restrictions found by treating and DDS consulting sources, including

restrictions found by Dr. Houston to understanding and remembering simple instructions and

carrying out simple tasks.  *See* Statement of Errors at 12; Record at 244.[7]  As counsel for the

commissioner acknowledged at oral argument, those restrictions would have eliminated three of

the four jobs, those of surveillance system monitor, document preparer, and telephone answering

---

[7] Other restrictions that the administrative law judge failed to transmit to the vocational expert included the need to avoid walking on uneven surfaces, found by Dr. Hayes, *see* Record at 277, and a limited ability to push or pull with the lower extremities, found by Dr. Rice, *see id*. at 440.

service operator, all of which have a General Educational Development ("GED") reasoning level

of 3. *See* Dictionary of Occupational Titles (U.S. Dep't of Labor, 4th ed. rev. 1991) ("DOT")

§§ 379.367-010 (surveillance system monitor), 249.587-018 (document preparer), 235.662-026

(telephone answering service operator); *Fletcher v. Astrue*, Civil No. 08-150-B-W, 2009 WL

214579, at \*2 (D. Me. Jan. 28, 2009) (rec. dec., *aff'd* Mar. 6, 2009) ("As this court has held in

the past, a limitation to simple repetitive tasks limits available jobs to those to which the

Dictionary of Occupational Titles assigns a General Educational Development ('GED') level of

1.").

In addition, when the administrative law judge posed a hypothetical question more

encompassing of the plaintiff's panoply of alleged limitations, asking him to assume an

individual with "all of the claimant's complaints of agoraphobia and also her new diagnosis of

fibromyalgia" who would miss work at least twice a month on an ongoing basis as a result of her

combination of mental and physical problems, the vocational expert testified that such a person

would not be able to maintain employment. *See* Record at 529.

In any event, even had the administrative law judge transmitted to the vocational expert

all mental and physical restrictions found by treating sources and nonexamining DDS

consultants, that would not save this case from reversal in the circumstances presented. None of

those sources and consultants had the benefit of later submitted, material new evidence bearing

on the plaintiff's physical limitations.

## II. Conclusion

For the foregoing reasons, I recommend that the decision of the commissioner be

**VACATED** and the case **REMANDED** for further proceedings consistent herewith.

## *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within ten (10) days after being served with a copy thereof.  A responsive memorandum shall be filed within ten (10) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 28th day of September, 2009.

/s/  John H. Rich III
John H. Rich III
United States Magistrate Judge